**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tiffany Gordwin, | No. CV-21-00888-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Amazon.com Incorporated, | |
| Defendant. | |

Before the court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 13). For the following reasons, the Motion will be granted in part and denied in part.[1]

## I. BACKGROUND

Plaintiff Tiffany Gordwin is a Black female employed as a Senior Human Resources ("HR") Specialist at Defendant Amazon.com, Inc. (Doc. 11 ¶¶ 37–39). She initially applied for an HR Manager role with Defendant on April 25, 2019. (Doc. 11 ¶ 42). After several rounds of interviews, she was rejected for the HR Manager position and was instead offered a position as a Senior HR Business Partner ("Sr. HRBP"). (Doc. 11 ¶¶ 44–52). She was told that preference was given to internal candidates for the HR Manager position and that an internal candidate in fact was offered the role. (Doc. 11 ¶¶ 45, 49). Plaintiff later learned

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

through her involvement in candidate interviews that "the message about internal candidates being favored was false." (Doc. 11 n.16). Plaintiff accepted the Sr. HRBP position, having been told that it was equivalent to an HR Manager position. (Doc. 11 ¶¶ 46–52).

Plaintiff began working as a Sr. HRBP in the Chicago area in June 2019. (Doc. 11 ¶ 53). Her trainer quit the company during her second week, and Defendant did not give her a new trainer. (Doc. 11 ¶ 53–54). She was, however, assigned a white male mentor in a less senior position than her who "degraded and humiliated" her, causing her to break down and cry several times. (Doc. 11 ¶¶ 55–57). On August 13, 2019, she requested a new trainer and was eventually assigned one, but she had already applied for, been offered, and accepted a Sr. HRBP role on a different team located in Phoenix. (Doc. 11 ¶¶ 58–60). She started that position in October 2019. (Doc. 11 ¶ 60).

Beginning in January 2020, Plaintiff began raising concerns about the lack of racial and gender diversity in senior leadership in her region and continued to do so until December 2020. (Doc. 11 ¶ 64–65). She also received negative treatment personally, including occasions where a white female supervisor criticized her "tone and approach;" where she learned from a coworker that after seeing Plaintiff's photo, one of Plaintiff's white female direct reports said she knew she "wouldn't get along" with Plaintiff; where a white male colleague "demeaned and embarrassed" Plaintiff and her white female supervisor did not support her; where that same supervisor "embarrassed and humiliated" her by "aggressively scold[ing] her;" and where a colleague "humiliated and degraded" Plaintiff in a meeting by stating that she was "not so bad to work with." (Doc. 11 ¶¶ 67–69, 76–78, 89–92, 97). Plaintiff's supervisor regularly communicated with her "in a demeaning and disrespectful manner." (Doc. 11 ¶ 78). During the COVID-19 pandemic, her supervisor required her to work in person despite four of the six employees who reported to the supervisor working remotely. (Doc. 11 ¶¶ 71–72). Further, at least two of her white male colleagues were assigned larger projects and received more opportunities for advancement. (Doc. 11 ¶¶ 74, 111–15).

In June 2020, Plaintiff contacted her "HR for HR" representative stating that she could no longer work for her supervisor and that she was willing to move to a less senior role if necessary. (Doc. 11 ¶¶ 79–80). She reported that her supervisor's treatment of her was causing her severe anxiety and depression. (Doc. 11 ¶ 82). Her complaints "were never fully addressed" and she was not assigned a new supervisor. (Doc. 11 ¶ 86).

From July 21 to August 27, 2020, Plaintiff was on leave under the Family and Medical Leave Act ("FMLA"). (Doc. 11 ¶ 93). When she returned, all her direct reports had been reassigned to report to somebody else. (Doc 11 ¶ 94). Plaintiff's supervisor had not informed Plaintiff "that her direct reports would no longer be reporting to her." (Doc. 11 ¶ 95).

On November 10, 2020, Plaintiff applied for a Senior HR Specialist role on another team, a role equivalent to her Sr. HRBP position. (Doc. 11 ¶ 98). She was offered and accepted the position, which she started on January 11, 2021. (Doc. 11 ¶¶ 98, 100). Approximately one week later, her new supervisor left on paternity leave, and she was not given any training or mentoring thereafter. (Doc. 11 ¶¶ 101–102).

During her two-year tenure with Defendant, Plaintiff has applied for at least ten internal positions. (Doc. 11 ¶ 106). In addition to the two that she was offered and accepted, she withdrew her application for at least four positions because she was told a manager needed to recommend her and she was rejected for four others. (Doc. 11 ¶¶ 108–10).

On June 2, 2021, Plaintiff filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Arizona Office of the Attorney General's Civil Rights Division ("CRD"). (Doc. 11 ¶¶ 33–34). The charge alleged violations of Title VII, the Americans with Disabilities Act ("ADA"), and the Arizona Civil Rights Act ("ACRA"). (Doc. 11 ¶ 33). Plaintiff receive a Notice of Right to Sue from the EEOC on July 1, 2021. (Doc. 11 ¶ 35).

Plaintiff initiated this employment discrimination case on May 19, 2021, and filed her First Amended Complaint ("FAC") on July 21, 2021, alleging nine counts: (1) retaliation under the FMLA, (2) discrimination under 42 U.S.C. § 1981, (3) retaliation

under § 1981, (4) discrimination under Title VII, (5) retaliation under Title VII, (6) discrimination under the ADA, (7) retaliation under the ADA, (8) discrimination under the ACRA, and (9) retaliation under the ACRA. (Doc. 11 ¶¶ 149–196). On August 20, 2021, Defendant filed the instant Motion to Dismiss the FAC for failure to state a claim. (Doc. 13). On October 7, 2021, Plaintiff filed a Stipulation of Dismissal of her ADA claims (Doc. 19), which the Court granted (Doc. 20). In a Joint Statement, the parties requested that the Court rule on the Defendant's Motion to Dismiss with regard to the remaining claims, while agreeing that Defendant's arguments as to the ADA claims were moot. (Doc. 21). The Court now addresses Defendant's Motion to Dismiss.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## III.    DISCUSSION

### a.    Section 1981, Title VII, and ACRA Claims

Plaintiff makes claims of discrimination and retaliation under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the ACRA. Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976). Similarly, Title VII prohibits employers from discriminating against individuals with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . [or] sex." 42 U.S.C. § 2000e-2(a). The ACRA includes an identical prohibition. A.R.S. § 41-

4

1463(B). Generally, "those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003). Likewise, the Arizona Supreme Court has held that the ACRA "is modeled after and general identical to" Title VII and that Title VII case law is therefore persuasive in the interpretation of the ACRA. *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909–10 n.3 (Ariz. 1983); *see also Kyles v. Contractors/Eng'rs Supply, Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997) (stating that when interpreting the ACRA, courts "follow federal case law interpreting Title VII when no Arizona precedent exists"). The Court will thus analyze Plaintiffs' § 1981, Title VII, and ACRA claims together, addressing any differences between the laws as they arise.

But first, as an initial matter, Defendant argues that Plaintiff's Title VII and ACRA claims are time-barred, at least in part. (Doc. 13 at 11–12). Plaintiff filed a charge with the EEOC and the CRD on June 2, 2021. (Doc. 11 ¶¶ 33–34). Under Title VII, "such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Under the ACRA, "[a] charge . . . shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred." A.R.S. § 41-1481(A). Under these statutes, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In contrast, because hostile work environment claims "are based on the cumulative effect of individual acts," as long as an act contributing to the claim occurs within the time limit, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" on those claims. *Id.* at 115, 117; *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003); *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019). Applying the statutes to this case, Plaintiff's disparate treatment discrimination claims and retaliation claims based on discrete acts occurring before August 6, 2020 are time-barred under Title VII, and her disparate treatment claims and retaliation claims based on acts occurring before December

4, 2020 are time-barred under the ACRA. To the extent Plaintiff's claims are time-barred, they will be dismissed with prejudice.

### i. Discrimination (Counts II, IV, and VIII)

Plaintiff alleges that Defendant discriminated against her by "denying her the equal terms and conditions of employment . . . and subjecting her to a hostile work environment" because of her race, color, and sex as applicable under the statutes. (Doc. 11 ¶¶ 158, 168, 188). The Court will discuss her disparate treatment and hostile work environment claims in turn.[2]

#### 1. Disparate Treatment

To state a disparate treatment claim, a plaintiff must:

> allege[ ] sufficient facts to make plausible that "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."

*Albro v. Spencer*, 854 Fed. Appx. 169, 169–70 (9th Cir. 2021) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)). Additionally, to state a disparate treatment claim under § 1981, "a plaintiff must initially plead . . . that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right"—that is, the plaintiff must plead but-for causation. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Plaintiff has pled that she is a Black female, making her a member of a protected

---

[2] Plaintiff's FAC states that Defendant "knows that 'statistically significant demographic differences exist in performance ratings,' 'attrition,' and 'low performance actions,' that disproportionately impact minority employees," (Doc. 11 ¶ 147), and refers repeatedly to statistics involving minority representation among Defendant's employees. This could be construed as grounds for a disparate impact claim. But Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 16) refers only to disparate treatment, not disparate impact. Moreover, to the extent Plaintiff attempts to state a disparate impact claim, the FAC does not identify any specific employment practices or selection criteria that have a plausible causal relationship to the alleged disparate impact on minority employees. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).

class under § 1981, Title VII, and ACRA. (Doc. 11 ¶ 39). She has also pled facts that plausibly show she was qualified for each of the positions she has held while working for Defendant. (Doc. 11 ¶¶ 39–41). Defendant's Motion argues, however, that Plaintiff has not pled sufficient facts to make it plausible that she experienced an adverse employment action or to give rise to an inference of discrimination.

Plaintiff's FAC appears to attempt to allege seven specific adverse employment actions: (1) being rejected for the HR Manager role for which she initially applied (Doc. 11 ¶ 48), (2) receiving insufficient training (Doc. 11 ¶¶ 54, 102), (3) having to work in person during the COVID-19 pandemic while others worked remotely (Doc. 11 ¶ 71), (4) receiving less meaningful projects and in turn having fewer opportunities for advancement (Doc. 11 ¶¶ 74, 115), (5) having her direct reports reassigned to another employee (Doc. 11 ¶¶ 94–95), (6) withdrawing at least four applications for promotions because she was told a manager would need to recommend her (Doc. 11 ¶ 109), and (7) being rejected for four internal roles for which she applied (Doc. 11 ¶ 110).

An adverse employment action is defined as "one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks omitted). The Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000). For example, lateral transfers, more burdensome work schedules, reassignment to a worse office, denial of a lunch break, cutting off challenging assignments, transfers of job duties, undeserved performance ratings, unfavorable job references, and refusals to promote may all constitute adverse employment actions. *Id.* at 1241–42 (citing cases).

In this case, all but the sixth act Plaintiff alleges are the same as or closely analogous to actions that the Ninth Circuit has suggested are adverse employment actions. The sixth, however, is Plaintiff's withdrawal of applications for promotions. The FAC is unclear about the circumstances, but it appears that Plaintiff does not allege that she asked for manager recommendations but was denied them; she alleges that she "withdrew her

application . . . because she was told that a manager needed to recommend her." (Doc. 11 ¶ 109). While Plaintiff further alleges that she "received feedback that strongly suggested [her manager] had interfered with the process" for one of the promotions she sought, without any specificity as to the alleged interference, it still appears that it was Plaintiff who chose to withdraw her application. (Doc. 11 ¶ 109). Plaintiff's own decision to withdraw is not an adverse employment action by Defendant.

The next question for the remaining six actions is whether the FAC adequately pleads that Defendant took each adverse employment action "because of" Plaintiff's race, color, or sex. 42 U.S.C. § 2000e-2(a); A.R.S. § 41-1463(B). Plaintiff's allegations permit a plausible inference only that the first and fourth actions were discriminatory. As to her rejection for the HR Manager position for which she initially applied, Plaintiff plausibly alleges that Defendant's reason for rejecting her—a preference for internal candidates—was false and that she was actually rejected due to her race, color, and sex. (Doc. 11 ¶¶ 26, 48, n.16). However, her rejection occurred in May 2019 and is therefore actionable only under § 1981 as it is time-barred by Title VII and the ACRA. As to receiving less meaningful projects and having fewer opportunities for advancement as a result, Plaintiff properly pleads that two similarly situated white male colleagues have received more favorable treatment throughout her tenure with Defendant, giving rise to an inference of discrimination. (Doc. 11 ¶¶ 111–16). Plaintiff's allegations regarding these two actions also plausibly meet the higher but-for causation standard for a § 1981 claim because if true, the facts in the FAC support the conclusion that the adverse employment actions would not have occurred but for Plaintiff's race.

The Court cannot plausibly infer, however, that the second, third, fifth, or seventh adverse employment actions alleged by Plaintiff were discriminatory. Plaintiff alleges two instances of insufficient training. (Doc. 11 ¶¶ 54, 102). The first time, her trainer quit during the second week of training and Defendant did not assign a replacement trainer. (Doc. 11 ¶¶ 53–54). The second time, Plaintiff's new boss left on paternity leave during her second week and did not arrange for training for Plaintiff. (Doc. 11 ¶¶ 101–02). Nowhere does

Plaintiff allege that either instance was due to her race, color, or sex. Rather, the only plausible explanation for the training deficiencies is the departure of those responsible for Plaintiff's training for reasons having nothing to do with Plaintiff, which is a non-discriminatory explanation. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations . . . [p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.")

As to Plaintiff being required to work in person during the COVID-19 pandemic, again, the Court cannot plausibly infer from the facts alleged in the FAC that this was due to Plaintiff's race, color, or sex. The FAC states that of the six employees who reported to Plaintiff's manager, at least four worked remotely during the pandemic. (Doc. 11 ¶ 72). But the FAC provides no information alleging that those four employees were outside of Plaintiff's protected classes nor that their job duties were such that they could be considered similarly situated to Plaintiff, which would give rise to an inference of discrimination. The FAC also does not state any other facts to suggest that she was required to work in person because she was Black or a woman.

As to Plaintiff's direct reports being reassigned to another employee, the FAC states that this was done "[i]n response to [Plaintiff] taking FMLA leave" and to "punish[ ] [Plaintiff] for exercising her legal right to take medical leave." (Doc. 11 ¶¶ 94–95). While the FAC further states that it was part of Defendant's continuing "pattern of discriminating against [Plaintiff] due to her race," it offers no facts to support the conclusion that Plaintiff's direct reports were reassigned due to her race. (Doc. 11 ¶ 95). Rather, the only plausible explanation from the facts alleged is that the employees were reassigned because Plaintiff was on medical leave. *See Starr*, 652 F.3d at 1216.

Finally, as to Plaintiff's rejection for four internal roles, the FAC provides almost no information about these roles, stating only the dates that she applied for them. (Doc. 11 ¶ 110). She does not identify the roles for which she applied, whether she was qualified for the roles, whether similarly situated colleagues outside her protected classes received them

instead, or any other information that would allow for a reasonable inference that she was rejected because of her race, color, or sex. The FAC simply lacks any detail that could allow the Court to assess whether Plaintiff has a plausible claim for disparate treatment on this basis.

In sum, Plaintiff has sufficiently pled plausible disparate treatment discrimination claims under § 1981 with respect to her rejection for the HR Manager position in May 2019 and under § 1981, Title VII, and the ACRA with respect to her being assigned less meaningful projects. All other bases for her disparate treatment discrimination claims under the statutes will be dismissed.

### 2. *Hostile Work Environment*

To state a hostile work environment claim, a plaintiff must plausibly allege that "(1) she was subjected to verbal or physical conduct because of [a protected status], (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Manatt*, 339 F.3d at 798 (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not suffice to sustain a hostile work environment claim. *Id.* (internal quotation marks omitted). To determine whether an environment is hostile or abusive, a court must "look[ ] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (internal quotations omitted).

Here, Defendant argues that Plaintiff's FAC alleges only "two examples of conduct she perceived as referring to her race and/or gender," which are not enough to state a hostile work environment claim. (Doc. 13 at 17). Plaintiff counters that her allegations "show more than plausibly an inference of pervasive discrimination." (Doc. 16 at 18).

The FAC refers to a variety of occasions where Plaintiff felt degraded, demeaned, embarrassed, or otherwise put down by coworkers and supervisors. (Doc. 11 ¶¶ 56–58, 67–

69, 71, 76–79, 89–92, 97). It is true that Plaintiff alleges only two instances that were specifically racial or sex-based in nature. On the first, a supervisor criticized Plaintiff's "tone and approach," which Plaintiff took "to imply that as a Black female, she was being overly harsh and aggressive." (Doc. 11 ¶ 67). On the second, Plaintiff learned from a coworker that one of Plaintiff's direct reports remarked after seeing Plaintiff's photo that she "knew she 'wouldn't get along'" with Plaintiff. (Doc. 11 ¶ 69).

Still, "acts contributing to a hostile work environment do not need to be specifically racial [or sex-based] in nature" so long as there is some basis to infer "that incidents neutral on their face were in fact discriminatory." *Nganje v. CVS RX Servs., Inc.*, No. 2:13-cv-2327-HRH, 2014 WL 5453354, at *5 (D. Ariz. Feb. 11, 2014) (internal quotations omitted). Here, in light of the FAC's allegations of the racial and sex-based comments made by colleagues as well as the more favorable treatment given to white male coworkers, a reasonable fact-finder could conclude that the facially neutral events, too, were in fact based on Plaintiff's race, color, and sex. *See id.* Plaintiff's allegations that she suffered severe anxiety and depression and that she was willing to take a lower-level position due to her treatment is sufficient to suggest that the environment unreasonably interfered with her work performance. (Doc. 11 ¶¶ 80–82); *see id.* at *7. Thus, taking into account all of the circumstances alleged in the FAC, Plaintiff has stated plausible hostile work environment claims under § 1981, Title VII, and the ACRA.

### ii. Retaliation (Counts III, V, and IX)

To state a retaliation claim, a plaintiff must plausibly allege (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there was a but-for causal relationship between the two. *See Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Albro*, 854 Fed. Appx. at 170. "An employee engages in protected activity when she opposes an employment practice that either violates Title VII[, § 1981, or ACRA] or that the employee reasonably believes violates that law." *Westendorf*, 712 F.3d at 422. Here, Defendant argues that Plaintiff has not sufficiently pled the second or third prongs. Plaintiff first plausibly engaged in

protected activity in January 2020 when she voiced concerns about the lack of diversity in certain senior leadership roles, in addition to later instances in which she complained of racial and gender discrimination. (Doc. 11 ¶ 64; Doc. 16 at n.4).

Looking to the six adverse employment actions sufficiently pled in the FAC as discussed above—Plaintiff's (1) being rejected for the HR Manager role, (2) receiving insufficient training on two occasions, (3) having to work in person during the COVID-19 pandemic, (4) receiving less meaningful projects and in turn having fewer opportunities for advancement, (5) having her direct reports reassigned to another employee, (6) being rejected for four internal roles for which she applied—Plaintiff has plausibly alleged only that the fourth would not have occurred but for her engagement in protected activity. Her rejection for the HR Manager role and the first instance of insufficient training occurred before she voiced any concerns about discrimination, and Plaintiff does not allege that her new manager who was responsible for the second instance of insufficient training even knew of her previous complaints. Moreover, as with the discrimination claims, the clear non-retaliatory reasons for the insufficient training—the departure of the trainers for reasons unrelated to Plaintiff—render any supposed retaliatory cause implausible. Likewise, the fifth and sixth adverse employment actions are not plausibly retaliatory under these statutes and the facts set forth in the FAC for the same reasons that they are not plausibly discriminatory, as discussed above.

As to the third adverse employment action, a supervisor requiring Plaintiff to work in person during the COVID-19 pandemic, Plaintiff has not alleged facts that would allow the Court to draw an inference that it was because of her discrimination complaints. In fact, the first time that Plaintiff alleges she complained of discrimination to that supervisor was in May 2020, after the pandemic had begun. (Doc. 11 ¶ 75–77). Plaintiff makes no assertion that the supervisor otherwise knew or had reason to know of her protected activity at the time the supervisor required her to work in person.

The facts alleged in the FAC do, however, permit a plausible inference that Plaintiff would not have received less meaningful assignments than her colleagues but for her

engagement in protected activity. The FAC plausibly alleges that the supervisor who assigned projects became aware of Plaintiff's complaints and that there was no objective reason for Plaintiff to work on less meaningful projects. (Doc. 11 ¶¶ 65, 74, 81, 89–92). Therefore, Plaintiff has sufficiently pled a claim for retaliation under § 1981, Title VII, and the ACRA based on her being assigned less meaningful projects. All other bases for her retaliation claims under those statutes will be dismissed.

### b. FMLA Retaliation Claim (Count I)

Though Plaintiff labels the FMLA count as a "retaliation" claim, it is more appropriately labelled as an "interference" claim. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) ("By their plain meaning, the [FMLA's] anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing "Interference [with the] Exercise of rights."). To state an FMLA interference claim, a plaintiff must plausibly allege that: "(1) [s]he took FMLA-protected leave, (2) [s]he suffered an adverse employment action, and (3) the adverse action was causally related to [her] FMLA leave." *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 940–41 (D. Ariz. 2006), *aff'd*, 302 F. App'x 591 (9th Cir. 2008).

Defendant argues that Plaintiff has failed to allege an adverse employment action for this claim because she does not allege that the reassignment of her direct reports continued after she returned from leave, and thus, it was merely a temporary change. (Doc. 13 at 20). To the contrary, though, the FAC states that Plaintiff's supervisor "failed to inform [Plaintiff] that her direct reports would no longer be reporting to her." (Doc. 11 ¶ 96). Read in the light most favorable to Plaintiff, this implies that the reassignment was not merely temporary and thus amounts to an adverse employment action plausibly suffered due to Plaintiff's use of FMLA leave. Plaintiff has adequately pled an FMLA interference claim.

///

///

## IV. CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). Here, amendment of Plaintiffs' time-barred claims would be futile, but she may be able to cure the deficiencies of the other claims that will be dismissed. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 13) is **granted in part** and **denied in part** as follows:

1. The Motion is **denied** as to Count I.
2. The Motion is **denied** as to Count II's hostile work environment claim and disparate treatment claims based on Plaintiff's rejection for the HR Manager role in May 2019 and her receiving less meaningful project assignments and is otherwise **granted without prejudice** as to Count II.
3. The Motion is **denied** as to Count III's, Count V's, and Count IX's claims based on Plaintiff's receiving less meaningful project assignments; is **granted with prejudice** as to Count V's claims based on events occurring before August 6, 2020 and as to Count IX's claims based on events occurring before December 4, 2020; and is otherwise **granted without prejudice** as to Counts III, V, and IX.
4. The Motion is **denied** as to Count IV's hostile work environment claim and disparate treatment claim based on Plaintiff's receiving less meaningful project assignments; is **granted with prejudice** as to Count IV's disparate treatment claims based on events occurring before August 6, 2020; and is otherwise **granted without prejudice** as to Count IV.
5. The Motion is **denied as moot** as to Counts VI and VII.
6. The Motion is **denied** as to Count VIII's hostile work environment claim and

disparate treatment claim based on Plaintiff's receiving less meaningful project assignments; is **granted with prejudice** as to Count VIII's disparate treatment claims based on events occurring before December 4, 2020; and is otherwise **granted without prejudice** as to Count VIII.

**IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended Complaint no later than December 8, 2021.

Dated this 17th day of November, 2021.

Honorable Steven P. Logan
United States District Judge