**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tiffany Gordwin,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Amazon.com Incorporated,<br><br>　　　　　　Defendant. | No. CV-21-00888-PHX-SPL<br><br>**ORDER** |

### I.　　BACKGROUND

Plaintiff Tiffany Gordwin is a Black woman employed as a Senior Human Resources Specialist for Defendant Amazon.com, Inc. (Doc. 11 ¶¶ 37, 39). She alleges race-and sex-based employment discrimination. (Doc. 11). After Defendant's Motion to Dismiss was granted in part, Plaintiff's remaining claims include hostile work environment, disparate treatment, and retaliation claims pursuant to Title VII, § 1981, and the Arizona Civil Rights Act, in addition to an interference claim pursuant to the Family and Medical Leave Act. (Doc. 23).

On April 15, 2022, the parties filed a Joint Motion for Resolution of Discovery Dispute (Doc. 38). Plaintiff has served a Rule 45 subpoena on John Felton, Senior Vice President of Global Delivery Services ("GDS") for Defendant.[1] (Doc. 38-1). Plaintiff

---

[1] Defendant also objects to an anticipated Rule 45 subpoena on Beth Galetti, Senior Vice President of People eXperience and Technology for Defendant. But because such a subpoena has not been served and has not otherwise been presented to the Court, and because Plaintiff does not address a subpoena of Ms. Galetti, the Court will not

seeks documents and information related to employee diversity data for the GDS division, which is the division to which Plaintiff provides services—though she herself works in the human resources ("HR") division. (Hearing Tr. at 16:25–17:7). Defendant objects to the subpoena on two grounds: (1) Defendant argues that the GDS diversity data that Plaintiff seeks has no relevance to her claims; and (2) Defendant argues that Mr. Felton is an improper "apex" witness. The Court held a hearing on the dispute on May 11, 2022 (Doc. 45) and will now address the issues in turn.

## II. RELEVANCE

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b). Relevance in this context "is defined very broadly." *Equal Emp. Opportunity Comm'n v. Scottsdale Healthcare Hosps.*, No. CV-20-01894-PHX-MTL, 2021 WL 4522284, at *2 (D. Ariz. Oct. 4, 2021) (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)). Relevant information is that which is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (internal quotation marks omitted). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements . . . ." *Id.*

The Court finds that the information related to GDS diversity data that Plaintiff seeks easily clears the "relatively low bar" of relevance. *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020). "Statistical evidence is unquestionably relevant in a Title VII disparate treatment case" because it may help establish the plaintiff's *prima facie* case or show pretext. *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362–63 (9th Cir. 1985). Defendant argues that data regarding the GDS division is irrelevant because it is not Plaintiff's division, but the Ninth Circuit rejected a similar argument in *Diaz*. There, the plaintiff, who worked in Tucson, sought employment statistics for his employer's entire western region. *Id.* at 1362. The employer argued that

---

address its propriety at this time.

data outside of Tucson was irrelevant. *Id.* at 1363. The Ninth Circuit held otherwise, concluding that broader data might reveal "otherwise unavailable indications of an employer's conscious or unconscious motives." *Id.* As the Court stated, "the promotion patterns of the employer, as a whole, are relevant to such an analysis of motive." *Id.* Likewise, here, data regarding the GDS division—a division with which Plaintiff regularly works—may be probative of Defendant's motives in its employment decisions, which bear directly on Plaintiff's claims. Accordingly, the information that Plaintiff seeks in her subpoena of Mr. Felton is within the proper scope of discovery.

### III.  APEX DOCTRINE

Rule 26(c) allows courts to limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Pursuant to this rule, "[c]ourts have recognized that seeking the deposition of a high-level executive within an organization (an 'apex' deposition) creates a tremendous potential for abuse or harassment." *Topete v. City of Mesa*, No. CV-18-03127-PHX-ROS (ESW), 2020 WL 8872800, at *1 (D. Ariz. Apr. 29, 2020) (internal quotation marks omitted). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in this case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal quotation marks omitted). When it comes to large, multi-national corporations with many high-level executives, such as Defendant, the Court must consider the deponent's place within the corporate hierarchy in relation to those factors; "the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.* Still, "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied," *id.* (internal quotation marks omitted), and must "show good cause by demonstrating harm or prejudice that will result from the

discovery," *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

Defendant erroneously argues that it is *Plaintiff's* burden to show that Mr. Felton has unique first-hand knowledge of the facts at issue and that she has exhausted less intrusive discovery methods. (Doc. 38 at 4). It bears emphasizing that once Plaintiff has shown that the information sought is within the scope of proper discovery, it becomes *Defendant's* "heavy burden" to show that discovery should be denied. *See Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 WL 4003123, at *2 (D. Ariz. July 15, 2020). While the Court considers Mr. Felton's knowledge and the availability of less intrusive discovery methods, the Court may deny discovery *only* if *Defendant* demonstrates good cause to do so. *See* Fed. R. Civ. P. 26(c)(1); *Rivera*, 364 F.3d at 1063.

Here, Mr. Felton is one of 19 Senior Vice Presidents within Defendant's corporate hierarchy and falls two levels below the CEO, which certainly places him near the apex. (Hearing Tr. at 7:24–8:3). But Plaintiff argues that her direct supervisor provides the GDS diversity data directly to Mr. Felton, who is the person empowered to make decisions based on the data. (Hearing Tr. at 9:12–10:9). Defendant generally disputes this characterization (Hearing Tr. at 12:17–20), but does not argue that Mr. Felton lacks knowledge of the data or that anyone else has more, better, or equal knowledge of the data and how it is used. Instead, Defendant argued repeatedly at the hearing that Plaintiff has not provided any evidence that Mr. Felton has such knowledge. (Hearing Tr. at 7:8–9; 19:1–2, 10–11; 21:23–22:1; 26:13–14). As noted, however, it is not Plaintiff's burden to produce such evidence. Moreover, even when pressed by the Court at the hearing, Defendant offered no specific examples of less intrusive ways for Plaintiff to obtain information about the GDS data, instead making only vague offers to "meet and confer" with Plaintiff regarding other data. (Hearing Tr. at 13:1–15:10; 21:11–22). Finally, Defendant has failed to show *any* harm or prejudice that may result from discovery, precluding the Court from granting the relief it seeks. (*See* Hearing Tr. at 6:2–8:13). The only conceivable prejudice the Court sees is the mere fact that Mr. Felton is near the top of Defendant's corporate hierarchy, but that does not suffice to establish good cause. *See*

*Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416 CRB (JSC), 2012 WL 3939320, at *1 (N.D. Cal. Aug. 24, 2012) ("A proposed deponent's status as a busy, high-ranking executive is not itself sufficient to justify a protective order." (internal quotation marks omitted)). Defendant has not met its heavy burden to show that the apex doctrine applies.

**IT IS THEREFORE ORDERED** that the Joint Motion for Resolution of Discovery Dispute (Doc. 38) is resolved in favor of Plaintiff. Defendant and Mr. Felton shall comply with the subpoena.

Dated this 16th day of May, 2022.

Honorable Steven P. Logan
United States District Judge